### W. L. LANGLEY v. C. A. MISENHEIMER.

(Filed 21 May, 1919.)

**Negligence— Explosives— Dynamite— Master and Servant— Evidence— Instructions—Trials.**

In this action to recover damages for the alleged negligence of defendant's employees having in their possession, with the knowledge of the defendant and for his use, dynamite caps, one of which was carelessly left or exposed and exploded, causing the injury to plaintiff, defendant's lessee, while engaged in defendant's service, the evidence was unconflicting that, of two of these employees, the caps in their possession could not have caused the injury, or that the defendant could not have been aware of the fact that they had them, leaving evidence only of one of these employees having the caps under circumstances wherein the defendant could have been held responsible: *Held*, not error to the plaintiff's prejudice for the judge in his charge to confine the jury in their inquiry to this one

employee, and not objectionable under a further charge that the defendant would be responsible if any employee had carelessly so left these caps that they exploded, and thus proximately caused the injury alleged.

APPEAL by plaintiff from *Harding, J.,* at the September Term, 1918, of GASTON.

This is an action to recover damages for personal injuries alleged to have been sustained by the plaintiff by the explosion of a dynamite cap on the lands of the defendant, which the plaintiff had leased, the plaintiff at the time of the explosion being engaged in heating water for killing hogs of the defendant.

The plaintiff was injured on 24 February, 1914. The evidence tended to show that in August, 1913, the defendant had a stone house built on said land within about twenty feet of the house at that time occupied by tenants of the defendant, and that dynamite was used in blasting rock for the construction of the house; that John Fisher, who was then a tenant and employee of the defendant and living upon the premises, bought the dynamite with the knowledge of the defendant; that while the house was being built Moses Wright, another employee of the defendant, was seen at one time to bring a bundle of dynamite from the house and place it on the ground not far from the place of the explosion, in February, while he lighted a pipe, and that he then took up the bundle and carried it to the place of the blasting three or four hundred yards distant; that another employee of the defendant named Robinson bought fifty sticks of dynamite, all of which was used in shooting holes for the planting of pecan trees.

There was no evidence that any part of the dynamite brought from the house by Wright was left on the ground nor was there any evidence that the dynamite used by Robinson was at any time in or near the premises where the explosion took place, and Fisher testified that he did not carry the dynamite he bought for the defendant near the place of the explosion, and, on the contrary, he stored it in a house about a hundred yards distant.

His Honor, among other things, charged the jury as follows: "That there is no evidence in this case from which the jury can find that the dynamite cap which the plaintiff claims exploded, causing his injury, was left on the premises by any other tenant or employee of the defendant than Fisher, and therefore, in passing upon the issue of negligence, the jury will leave out of their consideration altogether evidence tending to show that one German Robinson had some time prior to the plaintiff's injury used dynamite caps in a field some one-fourth or half mile from the place of the injury for the purpose of blasting holes for pecan trees," and the plaintiff excepted upon the ground that the charge

excluded from the jury the consideration of the conduct of all the employees of the defendant except Fisher.

There was a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff appealed.

*Mangum & Woltz attorneys for plaintiff.*
*Cansler & Cansler, Carpenter & Carpenter, and Thaddeus A. Adams attorneys for defendant.*

PER CURIAM. The evidence in this case, while probably sufficient to be submitted to a jury, was largely conjectural in character.

The injury was in February, 1914, and the evidence shows that the dynamite carried on the premises, with the consent of the defendant, was used in August, 1913, six months before.

The explosion was in the yard about twenty feet from the house, and there is no evidence that any one procured dynamite except Fisher and Robinson.

Fisher testified: "As to where I took the dynamite when I carried it home, will say there was a cotton house about one hundred yards from the house, so I took it there and put it there. I had children and did not want them to get hold of the dynamite and caps, and I locked the dynamite and caps up. As to how far from the cotton house the blasting was done and which way you would go from cotton house to the blasting, will say some three or four hundred yards; cotton house was between the house and the place where the blasting was done.

"No, I didn't pass through the yard either way. I remember there was one negro helping me with the blasting and he bored one more hole than I had caps for. I thought I had more caps and dynamite and I had used all the dynamite and caps I had."

And Robinson: "Lived on Dr. Misenheimer's farm in 1912. Used fifty dynamite caps to shoot out pecan tree holes. Dr. Misenheimer told me to use them; got them at the Charlotte Hardware Company in January, 1912. Carried them to the field where the pecan trees was, about half a mile from the house. The pecan orchard was between Charlotte and the house. Never carried none of those dynamite caps or any of the dynamite to the house; put them in a sack at Charlotte Hardware Company and put them out there in an old field until I could use them."

The only other evidence of dynamite in possession of any employee of the defendant is from a witness Brice, who said: "I saw Moses Wright come out of the house with dynamite wrapped up in paper. Came out of the porch, and he stopped to light his pipe there where I was waiting on the masons, and after he lighted his pipe he took the

dynamite and went on down the road. Just saw the dynamite; did not see the caps at all; saw the fuse; the paper was not tied up; was in a bundle like. I did not see no strings to it. After he got done lighting his pipe, picked it up and went on."

This recital of the evidence shows that the dynamite used by Robinson was not at any time near the place of the explosion, that he had only fifty sticks, and that all were used in shooting the holes for the pecan trees, and the part of the charge excepted to was simply for the purpose of excluding from the consideration of the jury the evidence as to Robinson's having dynamite, with the knowledge and approval of the defendant, which it was proper to do. He could also with propriety have excluded the consideration of the dynamite brought from the house by Wright because the same witness who testified to this fact said that after Wright lighted his pipe he picked up the bundle and carried the dynamite away, and there is no evidence that any part of the dynamite was left on the ground, but his Honor did not withdraw this evidence from the jury, and on the contrary he charged the jury as follows, at the request of the plaintiff: "Although the plaintiff did not show by direct evidence as to how any dynamite cap which exploded and injured the plaintiff, if you find a dynamite cap did explode and injure the plaintiff, was placed in or near the fire mentioned in plaintiff's evidence, if you find it was so placed, still if, from all the circumstances, you find by a greater weight of the evidence that any such cap was carelessly left at said place *by any employee* of the defendant acting within the scope of his employment, and the plaintiff was injured by an explosion of such cap, and any such careless acts were the proximate cause of plaintiff's injury, it will be your duty to answer the first issue 'Yes,'" thereby leaving the evidence as to Moses Wright, who was an employee, to the jury.

We have carefully examined the record and find no error which entitles the plaintiff to a reversal of the judgment.